# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
### PENSACOLA DIVISION

**UNITED STATES OF AMERICA**

**v.**                                    **Case Nos.:  3:08cr62/LAC/CJK**
                                                      **3:10cv164/LAC/CJK**
**MARCO GREEN**

_____/

## REPORT AND RECOMMENDATION

This matter is before the court upon Defendant's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 and supplement thereto (docs. 323, 333). The Government filed a response and supplemental response (docs. 330, 335) and Defendant has filed a reply (doc. 337). The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2; *see also* 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72(b). After a careful review of the record and the arguments presented, it is the opinion of the undersigned that Defendant has not raised any issue requiring an evidentiary hearing and that the § 2255 motion should be denied. *See* Rules Governing Section 2255 Cases 8(a) and (b).

## PROCEDURAL BACKGROUND

Defendant and nine others were charged in a single count indictment with conspiracy to possess with intent to distribute five hundred (500) grams or more of

cocaine and five (5) grams or more or crack cocaine (doc. 91). The Government filed a Notice of Enhancement Information identifying three prior controlled substance convictions from January 20, 2004 (doc. 113).[1] The same three convictions were cited in the Government's "Fed. R. Evid. 404(B) Notice" as uncharged misconduct that could be introduced to prove intent (doc. 151). After a single day of testimony and evidence, the jury returned a verdict of guilty. It specifically found that (1) the conspiracy did not involve cocaine and (2) the conspiracy involved five (5) grams or more of cocaine base (doc. 214).

The Presentence Investigation Report ("PSR") was disclosed to the defense on October 24, 2008 (doc. 253). Defendant was held accountable for 1.10 kilograms of cocaine base during the conspiracy, which yielded a base offense level of 34 (PSR ¶¶ 107–113, 119). Because there were no adjustments, Defendant's total offense level was also 34 (PSR ¶ 128). With a criminal history category of IV, the applicable advisory guidelines range was 210–262 months.

Defendant maintained his innocence and contested the entire contents of the PSR relating to his alleged involvement in the charged conspiracy. He also objected to the use of cocaine powder to determine the drug weight for which he was to be held accountable, objected to the inclusion of certain quantity information that was drawn from conduct outside the time frame of the conspiracy, and objected to the determination that the offense conduct in this case took place within two years of his release from incarceration (PSR ¶¶ 197–204).

---

[1] A review of the attachments to the Notice reveal that January 20, 2004 was actually the date Defendant was resentenced on a probation violation in each of the identified cases, not the date of the original offenses. Because the case numbers were included with each of the offenses, there is no question about the nature of the offenses. The three offenses in question are set forth in paragraphs 131–133 of the PSR.

The court overruled the objections at sentencing, and sentenced Defendant to a term of 236 months, at the midpoint of the applicable guidelines range (doc. 288 at 3, 9). Defendant appealed, arguing only that his sentence was substantively unreasonable in light of the evidence presented at trial and several positive character references (doc. 317 at 4). The Eleventh Circuit affirmed the judgment of the district court, finding that Defendant's sentence was both procedurally and substantively reasonable (*id*. at 4, 6). The United States Supreme Court denied certiorari on April 8, 2010 (doc. 322).

Defendant raised four grounds for relief in the instant motion, and three additional grounds in his supplement thereto. The Government opposes the motion in its entirety.

## LEGAL ANALYSIS

### General Standard of Review

Because collateral review is not a substitute for direct appeal, the grounds for collateral attack on final judgments pursuant to § 2255 are extremely limited. A prisoner is entitled to relief under section 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise subject to collateral attack. *See* 28 U.S.C. § 2255(a); McKay v. United States, 657 F.3d 1190, 1194 n. 8 (11th Cir. 2011). "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'" Lynn v. United States, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted). The "fundamental miscarriage of justice" exception

recognized in Murray v. Carrier, 477 U.S. 478, 496 (1986), provides that it must be shown that the alleged constitutional violation "has probably resulted in the conviction of one who is actually innocent . . . ."

The law is well established that a district court need not reconsider issues raised in a section 2255 motion which have been resolved on direct appeal. Rozier v. United States, 701 F.3d 681, 684 (11th Cir. 2012); United States v. Nyhuis, 211 F.3d 1340, 1343 (11th Cir. 2000); Mills v. United States, 36 F.3d 1052, 1056 (11th Cir. 1994); United States v. Rowan, 663 F.2d 1034, 1035 (11th Cir. 1981). Once a matter has been decided adversely to a defendant on direct appeal, it cannot be re-litigated in a collateral attack under section 2255. Nyhuis, 211 F.3d at 1343 (quotation omitted). Broad discretion is afforded to a court's determination of whether a particular claim has been previously raised. Sanders v. United States, 373 U.S. 1, 16 (1963) ("identical grounds may often be proved by different factual allegations . . . or supported by different legal arguments . . . or couched in different language . . . or vary in immaterial respects").

Furthermore, a motion to vacate under section 2255 is not a substitute for direct appeal, and issues which could have been raised on direct appeal are generally not actionable in a section 2255 motion and will be considered procedurally barred. Lynn, 365 F.3d at 1234–35; Bousley v. United States, 523 U.S. 614, 621 (1998); McKay v. United States, 657 F.3d 1190, 1195 (11th Cir. 2011). An issue is "'available' on direct appeal when its merits can be reviewed without further factual development." Lynn, 365 F.3d at 1232 n. 14 (quoting Mills, 36 F.3d at 1055). Absent a showing that the ground of error was unavailable on direct appeal, a court may not consider the ground in a section 2255 motion unless the defendant

establishes (1) cause for not raising the ground on direct appeal, and (2) actual prejudice resulting from the alleged error, that is, alternatively, that he is "actually innocent." Lynn, 365 F.3d at 1234; Bousley, 523 U.S. at 622 (citations omitted). To show cause for procedural default, a defendant must show that "some objective factor external to the defense prevented [him] or his counsel from raising his claims on direct appeal and that this factor cannot be fairly attributable to [defendant's] own conduct." Lynn, 365 F.3d at 1235. A meritorious claim of ineffective assistance of counsel can constitute cause. *See* Nyhuis, 211 F.3d at 1344.

Ineffective assistance of counsel claims are generally not cognizable on direct appeal and are properly raised by a § 2255 motion regardless of whether they could have been brought on direct appeal. Massaro v. United States, 538 U.S. 500, 503 (2003); *see also* United States v. Patterson, 595 F.3d, 1324, 1328 (11th Cir. 2010). The benchmark for judging a claim of ineffective assistance of counsel is "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland v. Washington, 466 U.S. 668, 686 (1984). To show a violation of his constitutional right to counsel, a defendant must demonstrate both that counsel's performance was below an objective and reasonable professional norm and that he was prejudiced by this inadequacy. *Id.,* 466 U.S. at 686; Williams v. Taylor, 529 U.S. 362, 390 (2000); Darden v. United States, 708 F.3d 1225, 1228 (11th Cir. 2013). In applying Strickland, the court may dispose of an ineffective assistance claim if a defendant fails to carry his burden on either of the two prongs. 466 U.S. at 697; Brown v. United States, ___ F.3d ___, 2013 WL 3455676 (11th Cir. July 10, 2013).

In determining whether counsel's conduct was deficient, this court must, with much deference, consider "whether counsel's assistance was reasonable considering all the circumstances." Strickland, 466 U.S. at 688; *see also* Dingle v. Secretary for Dept. of Corrections, 480 F.3d 1092, 1099 (11th Cir. 2007). Reviewing courts are to review counsel's performance in a highly deferential manner and "must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance." Hammond v. Hall, 585 F.3d 1289, 1324 (11th Cir. 2009) (quoting Strickland, 466 U.S. at 689); Chandler v. United States, 218 F.3d 1305, 1314 (11th Cir. 2000); Lancaster v. Newsome, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled to error-free representation")). Counsel's performance must be evaluated with a high degree of deference and without the distorting effects of hindsight. Strickland, 466 U.S. at 689. To show counsel's performance was unreasonable, a defendant must establish that "no competent counsel would have taken the action that his counsel did take." Gordon v. United States, 518 F.3d 1291, 1301 (11th Cir. 2008) (citations omitted); Chandler, 218 F.3d at 1315. When examining the performance of an experienced trial counsel, the presumption that counsel's conduct was reasonable is even stronger, because "[e]xperience is due some respect." Chandler, 218 F.3d at 1316 n.18.

With regard to the prejudice requirement, defendant must establish that, but for counsel's deficient performance, the outcome of the proceeding would have been different. Strickland, 466 U.S. at 694. For the court to focus merely on "outcome determination," however, is insufficient; "[t]o set aside a conviction or sentence solely because the outcome would have been different but for counsel's error may grant the defendant a windfall to which the law does not entitle him." Lockhart v.

<u>Fretwell</u>, 506 U.S. 364, 369–70 (1993); <u>Allen v. Secretary, Florida Dep't of Corrections</u>, 611 F.3d 740, 754 (11th Cir. 2010). A defendant therefore must establish "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." <u>Lockhart</u>, 506 U.S. at 369 (quoting <u>Strickland</u>, 466 U.S. at 687). Or in the case of alleged sentencing errors, a defendant must demonstrate that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been less harsh due to a reduction in the defendant's offense level. <u>Glover v. United States</u>, 531 U.S. 198, 203–04 (2001). A significant increase in sentence is not required to establish prejudice, as "any amount of actual jail time has Sixth Amendment significance." *Id.* at 203.

To establish ineffective assistance, Defendant must provide factual support for his contentions regarding counsel's performance. <u>Smith v. White</u>, 815 F.2d 1401, 1406–07 (11th Cir. 1987). Bare, conclusory allegations of ineffective assistance are insufficient to satisfy the <u>Strickland</u> test. *See* <u>Boyd v. Comm'r, Ala. Dep't of Corrections</u>, 697 F.3d 1320, 1333–34 (11th Cir. 2012); <u>Garcia v. United States</u>, 456 F. App'x 804, 807 (11th Cir. 2012) (citing <u>Yeck v. Goodwin</u>, 985 F.2d 538, 542 (11th Cir. 1993)); <u>Wilson v. United States</u>, 962 F.2d 996, 998 (11th Cir. 1992); <u>Tejada v. Dugger</u>, 941 F.2d 1551, 1559 (11th Cir. 1991); <u>Stano v. Dugger</u>, 901 F.2d 898, 899 (11th Cir. 1990) (citing <u>Blackledge v. Allison</u>, 431 U.S. 63, 74 (1977)); <u>United States v. Ross</u>, 147 F. App'x 936, 939 (11th Cir. 2005).

Finally, the Eleventh Circuit has recognized that given the principles and presumptions set forth above, "the cases in which habeas petitioners can properly prevail . . . are few and far between." <u>Chandler</u>, 218 F.3d at 1313. This is because the test is not what the best lawyers would have done or even what most good lawyers

would have done, but rather whether some reasonable lawyer could have acted in the circumstances as defense counsel acted. <u>Dingle</u>, 480 F.3d at 1099; <u>Williamson v. Moore</u>, 221 F.3d 1177, 1180 (11th Cir. 2000). "Even if counsel's decision appears to have been unwise in retrospect, the decision will be held to have been ineffective assistance only if it was 'so patently unreasonable that no competent attorney would have chosen it.'" <u>Dingle</u>, 480 F.3d at 1099 (quoting <u>Adams v. Wainwright</u>, 709 F.2d 1443, 1445 (11th Cir. 1983)). The Sixth Circuit has framed the question as not whether counsel was inadequate, but rather counsel's performance was so manifestly ineffective that "defeat was snatched from the hands of probable victory." <u>United States v. Morrow</u>, 977 F.2d 222, 229 (6th Cir. 1992).

Although section 2255 mandates that the court conduct an evidentiary hearing "unless the motion and files and records conclusively show that the prisoner is entitled to no relief," a defendant must support his allegations with at least a proffer of some credible supporting evidence. *See* <u>Chandler v. McDonough</u>, 471 F.3d 1360, 1363 (11th Cir. 2006) (citing <u>Drew v. Dept. of Corrections</u>, 297 F.3d 1278, 1293 (11th Cir. 2002) (referring to "our clear precedent establishing that such allegations are not enough to warrant an evidentiary hearing in the absence of any specific factual proffer or evidentiary support"); <u>Hill v. Moore,</u> 175 F.3d 915, 922 (11th Cir. 1999) ("To be entitled to an evidentiary hearing on this matter [an ineffective assistance of counsel claim], petitioner must proffer evidence that, if true, would entitle him to relief.")); <u>Ferguson v. United States</u>, 699 F.2d 1071, 1072 (11th Cir. 1983). A hearing is not required on frivolous claims, conclusory allegations unsupported by specifics, or contentions that are wholly unsupported by the record. <u>Peoples v. Campbell</u>, 377 F.3d 1208, 1237 (11th Cir. 2004); <u>Tejada</u>, 941 F.2d at 1559; <u>Holmes</u>

v. United States, 876 F.2d 1545, 1553 (11th Cir. 1989) (citations omitted).  Likewise,
affidavits that amount to nothing more than conclusory allegations do not warrant a
hearing.  Lynn, 365 F.3d at 1239.

Ground One: Conflict of Interest

Defendant claims that appointed counsel Clinton Couch, who appeared in his
behalf on July 8, 2008 (doc. 42), operated under a conflict of interest because Couch
had previously represented "co-defendant" Avarah Williams in 2006.[2]  Defendant
asserts that Mr. Williams was debriefed by the Government about Defendant's
brother Tremain Hamilton in 2007 and testified against Hamilton in 2008 (doc. 324
at 4).  Defendant states that as a result of Williams' debriefing, he received a
downward departure "through the assistance of counsel, Mr. Clinton Couch" (id.).
Defendant contends that even after the conclusion of Williams' case, Mr. Couch
continued to lobby the government to file a motion for downward departure in
Williams' behalf (id. at 6).

In criminal cases, an attorney's conflict of interest may deprive a defendant of
his Sixth Amendment right to assistance of counsel.  Strickland v. Washington, 466
U.S. 668, 692 (1984); Cuyler v. Sullivan, 446 U.S. 335, 348 (1980).  The existence
of a conflict of interest does not automatically require reversal.  Mickens v. Taylor,
535 U.S. 162, 168 (2002).  A conflict of interest will rise to the level of reversible
constitutional error only if the defendant has demonstrated that "an actual conflict of

---

[2]Mr. Couch represented Williams in case 3:06cr60/MCR; thus the two men were not co-defendants.  Williams
entered into a plea and cooperation agreement in June of 2006 and was sentenced in August of 2006 to a term of 330
months imprisonment.  (Case 3:06cr60/MCR, docs. 86, 95).  His sentence was ultimately reduced in December of 2008
to a term of 90 months imprisonment (id., docs. 102, 105, 107).

interest adversely affected his lawyer's performance," *Id.* (citing <u>Cuyler</u>, 446 U.S. at 348–349). Prejudice is presumed when there is an actual conflict of interest. *Id.* at 172 n.5 (citing <u>United States v. Cronic</u>, 466 U.S. 648, 662 n. 31). In this case, Defendant has shown neither an actual conflict nor any effect on counsel's performance.

Defendant makes much of the fact that Williams testified against his brother Tremain Hamilton. Although Defendant may be distressed by the fact that his attorney represented someone who testified against his brother, he offers no evidence or even suggestion that counsel's prior representation of Williams created a conflict in his representation of Defendant, or that this prior representation affected counsel's representation of Defendant in any way. Furthermore, Mr. Couch states in his affidavit that he did not learn of the connection between the two cases until after trial, and notes that Williams neither testified at Defendant's trial nor provided any information about Defendant to law enforcement or for use against Defendant at sentencing (doc. 330-1 at 1).[3] Defendant has failed to make any reasonable claim to show the existence of a conflict of interest, and he is not entitled to relief.

Ground Two: Failure to argue sentencing disparity between crack and powder cocaine

Defendant contends that Mr. Couch was constitutionally ineffective because he failed to challenge the disparity in sentencing between offenses involving crack and those involving powder cocaine. In failing to do so, he argues, counsel failed to preserve this argument for further appellate review.

---

[3]The court notes that Mr. Couch moved to withdraw on appeal, and substitute counsel was appointed (doc. 302). The record does not reflect the reason for this withdrawal, but there has been no suggestion that the motion was filed due to a conflict of interest.

Counsel is not constitutionally ineffective for failing to preserve or argue a meritless claim. Freeman v. Attorney General, Florida, 536 F.3d 1225, 1233 (11th Cir. 2008); *see also* Brownlee v. Haley, 306 F.3d 1043, 1066 (11th Cir. 2002) (counsel was not ineffective for failing to raise issues clearly lacking in merit); Chandler v. Moore, 240 F.3d 907 (11th Cir. 2001) (counsel not ineffective for failing to object to "innocuous" statements by prosecutor, or accurate statements by prosecutor about effect of potential sentence). The claim Defendant sought to raise would have been and still would be meritless. Defendant was sentenced using the 2007 edition of the Guidelines Manual and the supplement thereto (PSR ¶ 118). At that time, as today, an offense involving 1.10 kilograms of cocaine base would be scored at a base offense level of 34 (*see* PSR ¶ 119; § 2D1.1(c)(3) U.S.S.G. (Nov. 2012)). The district court sentenced Defendant, after reviewing the § 3553(a) factors and in consideration of the advisory guidelines, to a within-guidelines sentence that was found to be both procedurally and substantively reasonable (doc. 288 at 9, doc. 317). Finally, Defendant is mistaken that Kimbrough v. United States, 552 U.S. 85 (2007), which was decided before he was sentenced, entitles him to relief. His request for relief on this ground should be denied.

Ground Three: Failure to Call Paul Neal as a Witness

Defendant contends that counsel was constitutionally ineffective in that he failed to interview co-Defendant Paul Neal, who he claims was not cooperating with the government and would have provided testimony favorable to Defendant if called as a witness at trial (doc. 324 at 19).

First, Defendant is mistaken about Neal not being a cooperating witness. Neal signed a plea and cooperation agreement on August 8, 2008 (doc. 186), less than a month before the commencement of Defendant's trial. Thus, Defendant's suggestion that because Neal would automatically have been a more credible witness because he was not "getting time off" for his testimony is based upon a false premise (doc. 324 at 20). Defense counsel aptly notes in his affidavit that because Neal was set to be sentenced after Defendant's trial, there was no reason to believe that, right in the middle of the time that Neal was trying to earn his substantial assistance motion that he would cooperate with counsel for one of the co-defendants to Neal's detriment (doc. 330-1 at 2). Additionally, because Neal was represented by counsel, Mr. Couch would have had to obtain permission from Neal's attorney to interview Neal.

Even if counsel was mistaken, and Neal would have been willing to provide testimony favorable to the defense, Defendant cannot show that the outcome of his case would have been different when the evidence presented is viewed as a whole. At trial, cooperating co-defendant Michael McQueen testified that he had supplied Defendant with crack cocaine before McQueen went to prison (doc. 286 at 31–32). When McQueen got out of prison and he met back up with Defendant Green, Green refused to deal with him because Green thought McQueen may have been working with the police (*id*. at 32). McQueen then gave the following testimony:

Q: Did [Defendant] tell you who his source of crack cocaine was at that point?"

A: Yes.

Q: Who did he say it was?

A: Paul Neal.

Q: That's one of your named conspirators in this case, isn't it?

A: Yes, sir.

Q: So defendant Green was using Paul Neal as a source of supply?

A: Yes, sir.

(doc. 286 at 33).  If Neal had testified that he was not Defendant's supplier, this would not have impeached McQueen, because McQueen was reporting only what Defendant had told him, not that McQueen knew this from Neal or another independent source.

Furthermore, regardless of whether it was Neal or someone else who was Defendant's source of supply, there was sufficient other evidence to support a jury verdict against him.  Cooperating co-defendant Steven Pinkney testified that he had purchased crack cocaine from Defendant during the time frame of the conspiracy (doc. 286 at 20–21).  McQueen testified that he had seen Defendant dealing in crack cocaine and identified two individuals to whom Defendant had been selling crack cocaine (*id*. at 33).  Cooperating co-defendant Clifford Cooper, Jr. testified that he had been purchasing crack cocaine from Defendant for a couple of years, and that when a young female, who he did not know at the time was a police informant, had asked him to get some crack he called Defendant to procure it (*id*. at 41).  After that successful deal, Cooper called Defendant the following day to get more crack cocaine.  Cooper testified that although Defendant agreed to sell it, Defendant never showed up to deliver it (*id*. at 43).  William Blake Weekley, a narcotics officer with the Santa Rosa County Sheriff's Office, testified that he observed a vehicle driven by someone known to him to be Defendant en route to the agreed-upon buy location.  Shortly after Defendant passed the undercover law enforcement vehicle, Defendant threw something out of the window of his car and never showed up to the appointed

meeting with Cooper (*id*. at 54–55). The item Defendant threw out of the car window was later determined to be crack cocaine (*id*. at 60–61, 66–67). Santa Rosa Sheriff's Deputy Jacob McKinley also identified Defendant as the driver of the vehicle in question on the date of the unsuccessful attempt at the second controlled buy (*id*. at 71).

Based on the foregoing, Defendant has failed to show that counsel's failure to interview or call co-defendant Neal as a witness was either constitutionally deficient or prejudicial. He is not entitled to relief.

Ground Four: Failure to Raise Apprendi claim on appeal

Defendant's claim that appellate counsel should have raised a claim pursuant to Apprendi v. New Jersey, 530 U.S. 466 (2000) on appeal is based on the erroneous premise that neither the indictment nor the jury verdict specified a drug quantity (*see* doc. 91, 214). Furthermore, his 236 month sentence did not exceed the statutory maximum of life imprisonment set forth in 21 U.S.C. § 841(b)(1)(B)(iii). Appellate counsel was not constitutionally ineffective for his failure to raise a meritless argument before the Eleventh Circuit. *See* Freeman, 536 F.3d at 1233; Brownlee, 306 F.3d at 1066. Defendant is not entitled to relief.

Supplemental Ground One: Failure to Inform Defendant of Applicable Law and Sentencing Alternatives

Defendant contends that he was prejudiced when trial counsel provided misinformation about the strength of the Government's case which led him to "reject the possibility of a potential plea bargain" (doc. 333 at 1). He asserts that had counsel

not mislead him in this manner, or had counsel sought a plea bargain where he could have pleaded guilty without cooperating, he would have pleaded guilty and received the benefit of a two or three level reduction for acceptance of responsibility (*id*. at 2).

Defendant has maintained his innocence throughout the proceedings, up to and including through the filing of the affidavit in support of his supplemental claims (PSR ¶ 197, doc. 288 at 2–3; doc. 333 at 8). Because of his assertions of innocence, it is unlikely that the district court would have accepted a guilty plea. *C.f.* <u>North Carolina v. Alford</u>, 400 U.S. 25 (1970). And, even if the court did accept such a plea, the commentary to the guidelines make clear that "[a] defendant who enters a guilty plea is not entitled to an adjustment under this section as a matter of right." U.S.S.G. § 3E1.1, comment. (n. 3). Application of the adjustment requires that a defendant "truthfully admit[] the conduct comprising the offense of conviction, and truthfully admit[] or not falsely deny[] any additional relevant conduct." *Id*. Nothing in the record supports a conclusion that this adjustment could have been applied in Defendant's case, and therefore, he has failed to show prejudice and he is not entitled to relief.

<u>Supplemental Ground Two: Failure to Object to Criminal History Calculation</u>

Defendant contends that counsel was constitutionally ineffective because he failed to object to the alleged miscalculation of Defendant's criminal history points. Defendant asserts that he should have been assessed only three criminal history points for the offenses listed in paragraphs 131–134 of the PSR because these offenses were related or consolidated. Again, Defendant is factually mistaken.

Defendant was actually assessed a total of five criminal history points for these four offenses. He pleaded guilty and was sentenced on August 27, 2001 for three of the four offenses (PSR ¶¶ 131–133), although he apparently violated probation on these offenses and was resentenced in 2004 (*see* doc. 113-2). Defendant was assessed three criminal history points for the convictions arising out a controlled buy on June 15, 2000 pursuant to § 4A1.1(a) and § 4A1.2(k)(1) (PSR ¶ 131). No criminal history points accrued for the two additional convictions that occurred on the same date but which stemmed from offense conduct that took place on March 8, 2000 and April 5, 2000 respectively because they were deemed, pursuant to § 4A1.2(a), to be related to the offense listed in the prior paragraph (PSR ¶¶ 132, 133). Finally, pursuant to § 4A1.1(b), he was assessed two additional criminal history points for a January 20, 2004 conviction for possession of a controlled substance and possession of drug paraphernalia where the offense conduct occurred on February 18, 2003 (PSR ¶ 134). The 2004 conviction was clearly unrelated to the three 2001 convictions as the offense conduct, arrest, and sentencing took place after the earlier three cases were resolved. Defendant's criminal history was properly scored and counsel was not constitutionally ineffective for his failure to make a frivolous objection. *See* Freeman, 536 F.3d at 1233; Brownlee, 306 F.3d at 1066.

Defendant argues in the alternative that counsel should have objected to the Government's Notice of Enhancement Information. He contends that the notice was deficient because it failed to cite any enhancement provision or to indicate the possible sentence. He claims that had he known the sentence he was facing he would have elected to plead guilty and not risk trial.

The Government's notice indicated its intent to invoke the increased penalty provisions under 21 U.S.C. § 841 and § 851, listed three prior convictions and attached relevant documentation identifying these convictions by their respective case numbers (doc. 113). The indictment charged Defendant with a violation of § 841(b)(1)(B)(ii) and (iii) (doc. 91). The enhanced penalty provision of the charged section provides that an individual who commits a violation of this section after a prior conviction for a felony drug offense has become final, shall be sentenced to a term of imprisonment which may not be less than ten years and not more than life imprisonment. 28 U.S.C. § 841(b)(1)(B). Thus, Defendant's assertion that he was "never placed on notice" that he faced a mandatory minimum sentence is disingenuous. Furthermore, the Eleventh Circuit has repeatedly rejected claims virtually identical to the one Defendant raises herein. *See, e.g.,* United States v. Perry, 413 F. App'x 140, 141–42 (11th Cir. 2011); United States v. Anthony, 345 F. Appx. 459, 466 (11th Cir. 2009); United States v. Bernard, 380 F. Appx. 801, 803 (11th Cir. 2010); United States v. Mells, 383 F. App'x 832, 834–35 (11th Cir. 2010).

Finally, because Defendant's applicable guidelines imprisonment range was 210 to 262 months and his ultimate sentence was 236 months, the enhancement had no practical effect on his sentence. The enhancement raised the mandatory minimum sentence in his case from five years to ten years which was still 90 months lower than the low end of the applicable guidelines ranges.

In sum, the Government's notice was statutorily adequate in this case, Defendant has failed to show deficient performance, and he is not entitled to relief.

Supplemental Ground Three: Failure to Object to Lack of Explicit Findings as to Drug Quantity

Defendant contends that the district court sentenced him without making any particularized findings as to drug quantity attributable, and that the quantity of drugs attributed to him was inflated because it was not reasonably foreseeable to him (doc. 333 at 5). He asserts that counsel was constitutionally ineffective for his failure to object.

A "defendant is accountable for all quantities of [drugs] with which he was directly involved and, in the case of a jointly undertaken criminal activity all reasonably foreseeable quantities of [drugs] that were within the scope of the criminal activity that he jointly undertook." USSB § 1B1.3, comment. (n.2). To determine a defendant's liability for the acts of others, the district court must first make individualized findings concerning the scope of criminal activity undertaken by that particular defendant. United States v. Ismond, 993 F.2d 1498, 1499 (11th Cir. 1993) (citations omitted); United States v. Ortuna-Herrera, 397 F. App'x 535, 537 (11th Cir. 2010) (quoting Ismond). In this case, the basis for the quantity of drugs for which Defendant was held accountable was expressly set forth in the PSR (see PSR ¶¶ 107–113). These figures were based on testimony and other information obtained from co-conspirators who had dealt directly with Defendant, as well as the cocaine base that law enforcement retrieved after Defendant had tossed it from his vehicle. Significantly, Defendant was only held accountable for his own personal distribution activities, not the actions of higher level members of the conspiracy (see PSR ¶ 14). Therefore, because Defendant was not held accountable for the actions of his co-conspirators under Pinkerton v. United States, 328 U.S. 640 (1946), there was no legal

basis for counsel to make the objection Defendant now suggests. Counsel was not constitutionally ineffective and Defendant is not entitled to relief on this ground.

## Certificate of Appealability

Section 2255 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. § 2255 11(b).

After review of the record, the court finds no substantial showing of the denial of a constitutional right. § 2253(c)(2); <u>Slack v. McDaniel</u>, 529 U.S. 473, 483–84 (2000) (explaining how to satisfy this showing) (citation omitted). Therefore, it is also recommended that the court deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." If there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Based on the foregoing, it is respectfully **RECOMMENDED**:

1. The motion to vacate, set aside, or correct sentence (doc. 323) be **DENIED**.

2. A certificate of appealability be **DENIED**.

At Pensacola, Florida, this 12th day of August, 2013.


/s/ *Charles J. Kahn, Jr.*

**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO THE PARTIES

**Any objections to these proposed findings and recommendations must be filed within fourteen days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u> A copy of objections shall be served upon all other parties. Failure to object may limit the scope of appellate review of factual findings. *See* 28 U.S.C. § 636; <u>United States v. Roberts</u>, 858 F.2d 698, 701 (11th Cir. 1988).**

Case Nos.: 3:08cr62/LAC/CJK; 3:10cv164/LAC/CJK